UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

_____

|                                   |   |                   |
|-----------------------------------|---|-------------------|
| CASIMIR L. LEBEAU, et al.         | ) |                   |
|                                   | ) |                   |
| Plaintiffs,                       | ) |                   |
|                                   | ) |                   |
| v.                                | ) | Civ. 14-4056-KES  |
|                                   | ) |                   |
| UNITED STATES OF AMERICA          | ) |                   |
|                                   | ) |                   |
| Defendant.                        | ) |                   |

_____)

**REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS**

# TABLE OF CONTENTS

I.    Introduction ........................................................................... 1

II.   Argument ............................................................................... 2

      A.   The 2011 BIA Letter Is Insufficient to Establish a Trusty
           Duty or Its Breach. ......................................................... 3

      B.   The Statute Of Limitations Bars This Action. ................................. 6

           1.   The Statute of Limitations Is Jurisdictional. ........................ 7

           2.   This Is Not A Trust Repudiation Case. ................................ 8

           3.   BIA's 2011 Interpretation of CRSTECA Did Not Begin
                the Running of the Limitations Period. ............................... 9

           4.   The Continuing Violations Doctrine Does Not Apply. ......... 10

           5.   Equitable Tolling Principles Do Not Apply. ......................... 12

      C.   Plaintiffs Have Failed To Allege A Specific Fiduciary Duty In
           A Statute Or Regulation That The United States Violated. ........... 13

      D.   The APA's Waiver of Sovereign Immunity Does Not Apply
           Here. ............................................................................. 15

      E.   Plaintiffs' Claims Are For Money Damages. ................................. 16

      F.   Plaintiffs' Accounting Claim Is Without Merit. ............................. 18

III.  CONCLUSION ...................................................................... 21

## TABLE OF AUTHORITIES

### CASES

*Bodner v. Banque Paribas*,
114 F. Supp. 2d 117 (E.D.N.Y. 2000) ............................................. 11, 12

*Boling v. United States*,
220 F.3d 1365 (Fed. Cir. 2000) ........................................................ 11

*Bowen v. Massachusetts*,
487 U.S. 879 (1988)........................................................................ 17

*Cobell v. Norton*,
260 F. Supp. 2d 98 (D.D.C. 2003).................................................. 20, 21

*Commonwealth of Puerto Rico v. United States*,
490 F.3d 50 (1st Cir. 2007).............................................................. 15

*Consol. Edison Co. v. United States*,
247 F.3d 1378 (Fed. Cir. 2001) ........................................................ 16

*El Paso Natural Gas Co. v. United States*,
750 F.3d 863 (D.C. Cir. 2014) ......................................................... 5

*Great-West Life & Annuity Ins. Co. v. Knudson*,
534 U.S. 204 (2002)........................................................................ 19

*Griffith v. Fed. Labor Relations Auth.*,
842 F.2d 487 (D.C. Cir. 1988)...................................................... 15, 16

*Gros Ventre Tribe v. United States*,
469 F.3d 801 (9th Cir. 2006) ........................................................... 5

*Indep. Equip. Dealers Ass'n v. Envtl. Prot. Agency*,
372 F.3d 420 (D.C. Cir. 2004)........................................................ 5, 6

*Lane v. United States Dep't of Agric.*,
187 F.3d 793 (8th Cir.1999) ............................................................ 5

*LeBeau v. United States*,
12-CV-4178, 2013 WL 4780079 (D.S.D. Sept. 5, 2013) ................... 9, 10

*Loudner v. United States*,
108 F.3d 896 (8th Cir. 1997) ..................................................... 7, 8, 10

*Marshall Leasing, Inc. v. United States,*
    893 F.2d 1096 (9th Cir. 1990)............................................................ 16

*McKeel v. Islamic Rep. of Iran,*
    722 F.2d 582 (9th Cir. 1983) ............................................................ 18

*Menominee Indian Tribe of WI v. United States,*
    12-CV-5217, 2014 WL 4290302 (D.C. Cir. Sept. 2, 2014).................... 12

*Miller v. Tony & Susan Alamo Found.,*
    134 F.3d 910 (8th Cir. 1998) .............................................................. 7

*Mitchell v. United States,*
    13 Cl. Ct. 474 (1987) .................................................................. 11, 12

*Reuter v. Jax Ltd., Inc.,*
    711 F.3d 918 (8th Cir. 2013) .............................................................. 4

*Sisseton-Wahpeton Sioux Tribe v. United States,*
    895 F.2d 588 (9th Cir. 1990) ........................................................... 8, 9

*Trudeau v. FTC,*
    456 F.3d 178 (D.C. Cir. 2006)...................................................... 15, 16

*U.S. Dept. of Justice v. Fed. Labor Relations Auth.,*
    981 F.2d 1339 (D.C. Cir. 1993) ........................................................ 15

*United States v. Andrews,*
    530 F.3d 1232 (10th Cir. 2008)......................................................... 19

*United States v. Jicarilla Apache Nation,*
    131 S. Ct. 2313 (2011).........................................................5, 14, 15, 20

*United States v. Mitchell,*
    463 U.S. 206 (1983)........................................................................ 14

*United States v. Mitchell,*
    445 U.S. 535 (1980)........................................................................ 14

*United States v. Navajo Nation,*
    537 U.S. 488 (2003) .................................................................... 5, 14

*Wolfchild v. United States,*
    559 F.3d 1228 (Fed. Cir. 2009) ........................................................ 20

*Yankton Sioux Tribe v. U.S. Dep't of Health & Human Servs.*,
    533 F.3d 634 (8th Cir. 2008) ................................................................ 10

## STATUTES

5 U.S.C. § 704 ...................................................................................... 5

25 U.S.C. § 162a .................................................................................. 14

25 U.S.C. § 4011 ................................................................................. 20

28 U.S.C. § 2401(a) .............................................................................. 7

Pub. L. No. 106-511, 114 Stat. 2365 ................................................... 9

68 Stat. 1191 ...................................................................................... 14

## MISCELLANEOUS

Restatement (Second) of Trusts § 25 ................................................. 20

## I.      Introduction

In September 2013, this Court held that the Cheyenne River Sioux Tribe Equitable Compensation Act ("CRSTECA") did not give Plaintiffs any rights, and noted that if Plaintiffs believe they are entitled to additional recourse, they must seek it in Congress.  Plaintiffs' attempt to avoid this conclusion by filing a new Complaint fares no better.  Whether Plaintiffs base their case on the United States' acquisition of and compensation for their land, which occurred decades ago, or the CRSTECA and BIA's interpretations of it, the federal courts simply do not have jurisdiction over this case and cannot grant Plaintiffs the relief they seek.  Plaintiffs' claims for the original acquisition and compensation for their land expired long ago.  And the CRSTECA — which acknowledged that the Cheyenne River Sioux Tribe had not received adequate compensation for its lands taken for the Oahe Dam and Reservoir Project and compensated the Tribe but not individual landowners — gave Plaintiffs no rights or cause of action.  Nor does a right of action exist under the BIA's interpretation of the CRSTECA, which this Court has upheld.

Defendant United States demonstrated in its Motion to Dismiss and supporting memorandum (ECF Nos. 10 & 11) that this Court should dismiss Plaintiffs' claims for myriad reasons:  they are barred by the statute of limitations and the doctrines of res judicata, collateral estoppel, and waiver; there is no valid waiver of sovereign immunity; and Plaintiffs failed to state a claim upon which relief can be granted because they have not identified a

1

specific statute or regulation that the United States allegedly violated.[1]
Plaintiffs' Memorandum of Law in Opposition to Defendant's Motion to Dismiss
(ECF No. 14) ("Plaintiffs' Opposition") attempts to rehabilitate their case by
focusing on a number of different actions taken by different components of the
United States that allegedly injured Plaintiffs, and by proposing novel and
irrelevant legal theories and remedies.  But Plaintiffs cannot dismissal of their
case because this Court lacks jurisdiction and cannot grant Plaintiffs relief.

## II.    Argument

To the extent that Plaintiffs now base their claims upon an October 2011
BIA letter to the Cheyenne River Sioux Tribe ("Tribe") that was not mentioned
in the Complaint, that letter does not support their claims.  The letter is neither
a final agency action subject to challenge, nor does it, as Plaintiffs allege,
prohibit the Tribe from sharing CRSTECA funds with individuals.

In addition, the statute of limitations bars this action.  Plaintiffs assert a
taking and inadequate compensation that took place decades ago.  The statute
of limitations is a jurisdictional requirement, but in any event, no continuing
violations or equitable tolling could excuses Plaintiffs' 60-year-delay before
filing suit.  Plaintiffs' attempts to focus this litigation on the BIA's
interpretation of the CRSTECA is unavailing because this Court has already
held that the Act did not create any interests or benefits for Plaintiffs, nor did
BIA's correct interpretation of the law somehow repudiate a trust that did not
exist.

---

[1] Defendants reincorporate all the arguments made in its Motion to Dismiss
here, but focus this brief on several important issues.

Plaintiffs also cannot identify a specific fiduciary duty in a statute or regulation that the United States violated. Even if the Treaty or General Allotment Act or Act of March 2, 1889, provided a duty to protect Plaintiffs' land against alienation, Congress exercised its plenary power when it specifically passed the Pick-Sloan Act and the 1954 Act, which authorized and provided compensation for the acquisition of Plaintiffs' land for the Oahe Dam and Reservoir. Any duty not to alienate would not apply as against the United States, particularly in light of these Acts. Plaintiffs identify no other substantive law that was allegedly violated because common law trust duties do not provide the basis for a claim against the United States.

Plaintiffs also have not alleged a valid waiver of sovereign immunity. The APA does not provide a waiver of sovereign immunity for general breach of trust or fiduciary duty claims.

Finally, Plaintiffs' accounting claim cannot survive dismissal. It relies on a novel legal theory for which there is no legal support. A "constructive trust" is a legal fiction used as an equitable remedy in some situations, but its use is not appropriate here, nor would use of this "trust" actually impose trust accounting obligations against the United States. Plaintiffs cannot state a claim that the United States mismanaged their fictional assets, nor can they show that an accounting of these fictional assets is actually necessary for them to bring suit.

### A. The 2011 BIA Letter Is Insufficient to Establish a Trusty Duty or Its Breach.

In Plaintiffs' Memorandum, they raise for the first time an argument that their trust and fiduciary duty claims are "based on Defendant's actions in October 2011 when the BIA prohibited the Tribe from sharing funds from the CRSTECA with the Individual Landowners."  Pls.' Mem. at 20, *see also* ECF No. 14-5 (October 2011 BIA letter from Regional Director to Tribe).  That argument fails.

First, Plaintiffs failed to allege anything about this letter in their Complaint.  October 2011 is not mentioned in the Complaint, nor is the letter specifically mentioned or attached to the Complaint.  Plaintiffs should not be allowed to informally amend their Complaint in this manner.  Amendment would be futile in any event because the letter is not final agency action subject to challenge, Plaintiffs do not tie the letter to any breach of fiduciary trust or duty, and because the letter does not actually prevent the Tribe from sharing CRSTECA funds.  *See Reuter v. Jax Ltd., Inc.*, 711 F.3d 918, 922 (8th Cir. 2013) (noting that motion to amend can be denied if amendment would be futile).

First, the letter is not a final agency action subject to challenge under the APA, or even of any legal import.  According to the letter, the Tribe requested clarification from the BIA about whether the Tribe could include in its plan to distribute the trust funds received as part of CRSTECA a provision allowing the Tribe to provide compensation directly to individual landowners.  ECF No. 14-5.  The Tribe did not request approval of such a plan, and the BIA's letter was "in the nature of consultation."  *Id.*  The letter explicitly states that "[i]n this

4

limited role, I would not disapprove the Plan or any of its components, but rather communicate to the Tribe and the Office of Special Trustee any proposed plan components that appeared to be clearly outside the permissible purposes of the" CRSTECA.   *Id.; see Indep. Equip. Dealers Ass'n v. Envtl. Protection Agency*, 372 F.3d 420, 427 (D.C. Cir. 2004) (*IEDA*) (finding that court lacks authority to review claims based on agency expressing its view of what the law requires of a party).   Consequently, the letter is not a final agency action subject to challenge, nor is it prohibiting the Tribe from taking any action.   *See Lane v. United States Dep't of Agric.,* 187 F.3d 793, 795 (8th Cir.1999) (noting that where there is no final agency action, a claim in federal court challenging the agency's action is not ripe for review); 5 U.S.C. § 704.

Nor do Plaintiffs tie the letter to any specific breach of trust or fiduciary duty.  To establish a breach of trust claim, Plaintiffs "'must train on specific rights-creating or duty-imposing statutory or regulatory prescriptions.'" *El Paso Natural Gas Co. v. United States*, 750 F.3d 863, 895 (D.C. Cir. 2014) (quoting *United States v. Navajo Nation*, 537 U.S. 488, 506 (2003)).  None of these facts (even if properly alleged) could establish an enforceable trust duty, because executive branch officials cannot define the parameters of the United States' trust relationship.  *See United States v. Jicarilla Apache Nation*, 131 S. Ct. 2313, 2325 & n.6 (2011) ("The Government assumes Indian trust responsibilities only to the extent it expressly accepts those responsibilities *by statute.*") (emphasis added); *Gros Ventre Tribe v. United States*, 469 F.3d 801, 810 (9th Cir. 2006) ("[T]he Tribes cannot allege a common law cause of action

for breach of trust that is wholly separate from any *statutorily granted right*.")
(emphasis added).  Here, Plaintiffs do not even attempt to tie this advisory
letter to any specific statutory or regulatory duty for the United States.  Nor
could they, given that the letter represents BIA's views of the CRSTECA, views
shared by this Court in the 2013 litigation.  *See IEDA*, 372 F.3d at 427.

The letter also simply does not support Plaintiffs' claims that the BIA
prohibited the Tribe from sharing funds with individual landowners.  The BIA
Regional Director "advised" that providing direct payments to individual
landowners did not appear to be within the CRSTECA's permissible purposes
for distribution of funds, but that the Tribe should exercise its discretion in
determining whether individual landowners might be eligible for particular
benefits.  None of this is of any consequence because (a) as this Court
previously concluded, there was no trust between the government and Plaintiffs
with respect to the CRSTECA funds, and (b), the letter did not in any way
prohibit the Tribe from sharing funds with individuals.  The letter cannot,
therefore, be the basis for a breach of trust action.  Plaintiffs once again fail to
demonstrate that the United States breached a particular fiduciary or trust
duty established in a statute or regulation.

## B. The Statute Of Limitations Bars This Action.

The statute of limitations is a jurisdictional bar to Plaintiffs proceeding
here.  In the Eighth Circuit, the statute of limitations is jurisdictional, and
Plaintiffs' failure to bring their claim within the 6 year limitations period
deprives this Court of jurisdiction.  Even if the issue was not jurisdictional,

however, Plaintiffs are not saved by equitable tolling principles or the continuing violations doctrine.

**1. The Statute of Limitations Is Jurisdictional**.

The Eighth Circuit has repeatedly held that the statute of limitations in 28 U.S.C. § 2401(a) is jurisdictional. *See* Def.'s Mem. at 7–8; *Miller v. Tony & Susan Alamo Found.*, 134 F.3d 910, 916 (8th Cir. 1998) ("Because a statute of limitations is one of the terms of Congress's consent, a time-barred claim against the Government is an unconsented claim, over which a district court has no jurisdiction."); *Loudner v. United States*, 108 F.3d 896, 900 (8th Cir. 1997).

Plaintiffs are incorrect that *Loudner* held the statute of limitations was not jurisdictional. Pls.' Opp'n at 18. In that case, the court found that the statute of limitations did not bar the plaintiffs' claims because the plaintiffs did not know about their potential claim and the government had not undertaken sufficient efforts to alert plaintiffs of their claim. *Loudner*, 108 F.3d at 901–02. Thus, the statute of limitations period did not begin to run until plaintiffs learned about their potential claim. *Loudner* does not challenge, however, the proposition that the statute of limitations is jurisdictional. *See id.* at 901. Instead, the Court expressly affirmed that it is, stating that "[f]iling within the applicable statute of limitations is treated as a condition precedent to the government's waiver of sovereign immunity, and cases in which the government has not waived its immunity are outside the subject-matter jurisdiction of the district courts." *Id.*

## 2.  This Is Not A Trust Repudiation Case.

Plaintiffs attempt to salvage their claim by arguing, *inter alia*, that the statute of limitations did not run until 2011, when they assert that the United States repudiated its trust obligations.  This argument is without merit.

First, the trust-repudiation rule does not apply in this context, because "[t]he statute of limitations begins to run when a trust beneficiary knows or should know of the beneficiary's claim against the trustee."  *Loudner,* 108 F.3d at 901.  In *Loudner*, the court discussed "so-called trust repudiations," and noted that "[w]here the trustee repudiates the trust by claiming to hold the trust corpus as the trustee's own, the cause of action does not accrue until the beneficiary 'has knowledge of the repudiation.'"  *Id.* at 901 n.2 (quoting *Sisseton-Wahpeton Sioux Tribe v. United States*, 895 F.2d 588, 593 (9th Cir. 1990).  In *Sisseton-Wahpeton Sioux Tribe*, the court explained that "trust repudiation" cases involve a trust beneficiary demanding money from the trust, and the trustee refusing to pay.  895 F.2d at 593.

This is not a trust repudiation case.  With respect to the CRSTECA funds, as has been conclusively established, there was no trust with individuals for the United States to repudiate.  With respect to Plaintiffs' lands held in trust that were acquired for the Oahe Dam and Reservoir Project, the United States, as trustee, never simply claimed the trust assets as its own.  Instead, the United States paid compensation for the acquisition of Plaintiffs' lands.  As in *Sisseton-Wahpeton Sioux Tribe*, Plaintiffs "had immediate knowledge of the precise share of money Congress found them entitled to," and

8

knew that their trust lands no longer belonged to them.  *See* 895 F.2d at 593.
Any claim accrued at that time.  With respect to trust lands, even if the Pick-
Sloan Act or the 1954 Act serves as "repudiation," Plaintiffs knew of such
repudiation in the 1950s when they no longer had ownership of their lands.
The trust would have been repudiated by that time.

### 3. BIA's 2011 Interpretation of CRSTECA Did Not Begin the Running of the Limitations Period.

Plaintiffs' attempt to rely on the BIA's actions in 2011 to save their claim
from the statute of limitations is futile.  According to Plaintiffs, it was not until
2011 that Defendant acknowledged that Plaintiffs' compensation for their land
was inadequate and held that Plaintiffs would not receive funds from
CRSTECA.  Pls.' Opp'n at 21.  Plaintiffs assert that the statute of limitations did
not begin running until October 2011 on that basis.

As an initial matter, Plaintiffs' assertion that the United States
acknowledged in the CRSTECA that it provided inadequate compensation to
the individual landowners is, simply, false.  *See* Pls.' Mem. at 20, 21.  The
CRSTECA states "the Federal Government did not justify, or fairly compensate
*the Tribe* for, the Oahe Dam and Reservoir project."  Pub. L. No. 106-511, 114
Stat. 2365 (emphasis added).  It says nothing regarding individual landowners
receiving inadequate compensation.  *See LeBeau v. United States*, 12-cv-4178,
2013 WL 4780079, at *3 (D.S.D. Sept. 5, 2013).

The CRSTECA also cannot be considered to be a repudiation of the
United States' trust relationship with Plaintiffs.  First, an act of Congress
cannot breach the United States' trust duty to Indians.  *See* Def.'s Mem. at 20–

9

21.  Also, the act acknowledged a joint tribal advisory committee's conclusion that *the Tribe* received inadequate compensation and provided additional compensation *for the Tribe*.  This Court held that CRSTECA did not provide these plaintiffs with any rights or benefits.  *LeBeau*, 2013 WL 4780079 at *7.  CRSTECA does not somehow represent the United States repudiating its trust with the individual landowners.

Nor does the BIA's October 2011 letter or views that CRSTECA required distribution of trust funds to the Tribe and not individuals demonstrate a repudiation of a trust.  Again, the United States did not claim any trust assets as its own, as required for repudiation of a trust.  *See Loudner*, 108 F.3d at 901 n.2.  It correctly stated that under the CRSTECA, funds should be distributed by BIA only to the Tribe and not to Plaintiffs or individual landowners.  The BIA's conclusion, affirmed by this Court, was that the CRSTECA did not establish a trust in the first instance, not that the CRSTECA ended an existing trust.  *See LeBeau*, 2013 WL 4780079 at *7 ("Likewise, the Act does not establish a trust relationship between plaintiffs and the United States.").  Therefore, no action of the BIA, including the October 2011 letter, could have breached a trust that did not exist.

### 4.  The Continuing Violations Doctrine Does Not Apply.

Nor does the continuing violations doctrine save Plaintiffs' claims.  *See* Pls.' Opp'n at 21–23.  "The continuing claims doctrine was initially employed to save claims involving periodic payments by the government from time bars by treating each incorrect payment as a new breach."  *Yankton Sioux Tribe v. U.S.*

*Dep't of Health & Human Servs.*, 533 F3d 634, 642 (8th Cir. 2008).  The doctrine does not apply where "a single governmental action causes a series of deleterious effects, even though those effects may extend long after the initial governmental breach."  *Boling v. United States*, 220 F.3d 1365, 1373 (Fed. Cir. 2000).

Here, any purported injury occurred when Plaintiffs' land was taken. There is no continuing duty that was violated.  *See Mitchell v. United States*, 13 Cl. Ct. 474 (1987) (holding that continuing claim doctrine did not apply to government's collection of inadequate compensation for right-of-way accrued at the time the right-of-way was granted).  Plaintiffs' assertion that four separate events caused their injury — the original taking, the inadequate compensation, the CRSTECA, and the distribution of the CRSTECA to the Tribe — does not bring this case within the continuing violations doctrine.

*Bodner v. Banque Paribas*, 114 F. Supp. 2d 117 (E.D.N.Y. 2000), not controlling authority in any event, is also inapplicable here.  *See* Pls.' Opp'n at 21–22.  The court there found a continuing violation of international law "for the confiscation and plunder of private property, for aiding and abetting genocide, and for conspiracy to plunder and transact in plundered property." *Id.* at 134.  Underlying the court's decision were the plaintiffs' allegations that defendants, by fraudulently concealing facts, had prevented the plaintiffs from learning critical information regarding their claims (such as whether the defendants possessed their assets or had transferred them).  The facts thus starkly contrast with this case in which all of the alleged wrongs — taking of

11

land, inadequate compensation, and the BIA letter — were publicly known and publicly disclosed.

Here, Plaintiffs' case is more akin to a standard Fifth Amendment takings case than *Bodner*. No continuing violation of international law has occurred here, no fraudulent concealment of Plaintiffs' claims occurred, and no continuing duty exists. While Plaintiffs may believe that the United States did not adequately compensate Plaintiffs for the acquisition of their land, the United States did not conceal any facts and Plaintiffs were able to bring their claims at any time. Plaintiffs' continuing violation theory would eviscerate the statute of limitations entirely.

### 5. Equitable Tolling Principles Do Not Apply.

Plaintiffs also argue that equitable tolling principles justify their 60 year delay in bringing suit. Equitable tolling principles are both irrelevant and unavailing because the statute of limitations is jurisdictional. "Equitable tolling is available to a party 'only if he shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Menominee Indian Tribe of WI v. United States*, 12-cv-5217, 2014 WL 4290302, at *5 (D.C. Cir. Sept. 2, 2014). Here, Plaintiffs do not demonstrate that they pursued their rights diligently.

And none of the reasons Plaintiffs cite indicate that they could not have brought their claims for 60 years. *See Mitchell*, 13 Cl. Ct. at 479 (noting that "the statute of limitations applies with no less force to the Indian beneficiary of a statutory trust than to the ordinary citizen in litigation with his Government"

and tolling requires demonstration of diligence).  Plaintiffs assert without any
credible support that the United States deceived them or frightened them into
not making a claim.[2]  They also make no mention of any action by the
government or otherwise during the period of 1954 and 2000 that would have
prevented Plaintiffs from pursuing their rights diligently or constitute
extraordinary circumstances that prevented Plaintiffs from doing so.  Plaintiffs
also do not provide any support for their assertion that they "were unfairly and
deceptively induced into believing that they would be fairly and justly
compensated for their lands."  Pls.' Opp'n at 27.  Their assertion that their
unjustified interpretation of CRSTECA "lulled Plaintiffs into inaction and placed
them in a situation that *de facto* prevented them from pursuing their rights,"
*id.*, does not justify equitable tolling of the statute of limitations here.

### C. Plaintiffs Have Failed To Allege A Specific Fiduciary Duty In A Statute Or Regulation That The United States Violated.

As the United States showed in its motion to dismiss, to sustain a breach
of trust or fiduciary duty claim, Plaintiffs must identify a specific statutory or
regulatory duty and claim that Defendant failed to carry out such duty.  Mem.
at 15.  Here, the only statutory or regulatory duty Plaintiffs have attempted to
demonstrate is a duty not to alienate trust property.  In its memorandum,
Defendant showed that Plaintiffs' sources of law did not support this duty.  *Id.*

---

[2] Plaintiffs' brief cites to a number of depositions to argue that the "United States ensured that the Individual
Landowners would be too frightened for their own livelihood to pursue their rights," but the deposition testimony
does not support that statement.  *See* Zeigler Decl., Ex. A (Dep. of C. Mortenson) at 47:20–50:13 (testifying that the
tribal chairman told him the Tribe would cancel his leases); Ex. C (Dep. of C. LeBeau) at 18:1–9 (testifying that his
father attended a meeting in which a "general . . . kind of got mad" and pounded on the table, but not testifying that
he, his father, or anyone else was frightened by this); Ex. D (Dep. of F. LeBeau) at 28:24–29:12; 31:24-32:22
(testifying that he was told if he did not agree with the appraisal he could get an attorney and contest it in court and
that tribal chairman threatened to cancel leases).

at 15–21.  But even if there was a sufficiently specific duty not to alienate, that duty was explicitly abrogated by Congress in the Pick-Sloan Act and the 1954 Act providing a fund to compensate the Tribe and allottees for their property. *See* Act of Sept. 3, 1954, Pub. L. No. 83-776, 68 Stat. 1191.

Plaintiffs argue that Defendant violated common law duties in its termination of the trust.  Pls.' Opp'n at 10—11.  But these common law duties do not suffice to state a claim for relief.  First, the United States is not a private trustee and common law duties do not define the United States' trust responsibilities.  *See Jicarilla*, 131 S. Ct. at 2323.  "Though the relevant statutes denominate the relationship between the Government and the Indians a 'trust,' see, *e.g.,* 25 U.S.C. § 162a, that trust is defined and governed by statutes rather than the common law."  *Id.* (citing *United States v. Navajo Nation,* 537 U.S. 488, 506 (2003) *(Navajo I)*).  Instead, "the analysis must train on specific rights-creating or duty-imposing statutory or regulatory prescriptions."  *Navajo I*, 537 U.S. at 506.  "Congress may style its relations with the Indians a 'trust' without assuming all the fiduciary duties of a private trustee, creating a trust relationship that is 'limited' or 'bare' compared to a trust relationship between private parties at common law."  *Jicarilla*, 131 S. Ct. at 2323 (citing *United States v. Mitchell,* 445 U.S. 535, 542 (1980) *(Mitchell I); United States v. Mitchell*, 463 U.S. 206, 224 (1983) (*Mitchell II*).

Here, Plaintiffs do not demonstrate any specific rights-creating or duty-imposing statutory or regulatory prescriptions that Defendant violated. Plaintiffs must concede that if the Treaty, General Allotment Act (held in

*Mitchell I* to create only a limited trust), and the Act of March 2, 1889, created a trust, it was a limited one.  *See* Pls.' Mem. at 8–9.  Common law duties cannot be enforced in a trust case such as this where Plaintiffs fail to demonstrate statutory or regulatory prescriptions.  *See Jicarilla,* 131 S. Ct. at 2323.

### D. The APA's Waiver of Sovereign Immunity Does Not Apply Here.

The APA does not, as Plaintiffs allege, waive sovereign immunity against the United States in all actions seeking other than money damages.  *See* Pls.' Opp'n at 28–29.  Section 702 provides a waiver of sovereign immunity for cases "seeking relief other than money damages *and* stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority."  The courts have accordingly limited the reach of Section 702's waiver for non-APA claims to claims under the Constitution or claims meeting the very restrictive criteria for remedying *ultra vires* actions. *See Trudeau v. FTC*, 456 F.3d 178, 189–90 (D.C. Cir. 2006) (holding that Section 702 waives sovereign immunity for "non-statutory" ultra vires and Constitutional claims); *see also Commonwealth of Puerto Rico v. United States*, 490 F.3d 50, 58–60 (1st Cir. 2007) (limiting Section 702 waiver to ultra vires and Constitutional claims).  Review under this exception is limited to a very narrow range of cases, in which the agency action is "contrary to a specific prohibition in [a statute] that [is] clear and mandatory."  *Griffith v. Fed. Labor Relations Auth.*, 842 F.2d 487, 493 (D.C. Cir. 1988); *see U.S. Dept. of Justice v. Fed. Labor Relations Auth.*, 981 F.2d 1339, 1343 (D.C. Cir. 1993) (describing the doctrine as 'extraordinary' and restricting it to "agency error 'so extreme

15

that one may view it as jurisdictional or nearly so'").  "Garden-variety errors of law or fact are not enough." *Griffith*, 842 F.2d at 493; *see also Trudeau*, 456 F.3d at 347 (describing nonstatutory review as a "narrow exception").

Plaintiffs' claims do not rise to the "extraordinary" level required for judicial review.  Defendant did not act outside the law, much less contrary to a specific and unambiguous statutory directive.  *See Griffin*, 842 F.2d at 493.  Instead, the relevant statutes expressly authorized the agency's action.  The CRSTECA mandated that the Secretary distribute funds only to the Tribe, and the Pick-Sloan Act and the 1954 Act allowed the acquisition of — and provided a set amount of funds for — Plaintiffs' land.  Plaintiffs thus do not assert claims within the gambit of 702's waiver of sovereign immunity.

### E. Plaintiffs' Claims Are For Money Damages.

Plaintiffs also do not fall within the APA's waiver of sovereign immunity because they seek compensation for an alleged injury that has already occurred.  That Plaintiffs have pled their requests for relief as equitable claims does not give this Court jurisdiction.  *See, e.g., Marshall Leasing, Inc. v. United States*, 893 F.2d 1096, 1099 (9th Cir. 1990); *Consol. Edison Co. v. United States*, 247 F.3d 1378, 1385 (Fed. Cir. 2001) (en banc).  The premise of Plaintiffs' suit is that they did not receive fair compensation for the United States' acquisition of their property, and thus Plaintiffs contemplate money damages as their ultimate remedy.  *See, e.g.,* Pls.' Opp'n at 15 ("the Individual Landowners were not adequately compensated"), 20 (claim accrued when "it was clear . . . the Individual Landowners would not be compensated"), 23 ("The

Individual Landowners have not yet been adequately compensated for the taking of their lands; nor do they have the benefit of the return of the lands."), 27 (arguing that claim did not run until "the BIA compensated *only* the Tribe for the woefully deficient sums paid under the 1954 Act").

*Bowen v. Massachusetts*, 487 U.S. 879 (1988), supports a finding that this Court lacks jurisdiction.  *See* Pls.' Opp'n at 29, 31–32.  In *Bowen,* the State of Massachusetts sought declaratory and injunctive relief to set aside an agency order related to disallowance of Medicaid reimbursement funds and to correct a method of calculating payments prospectively.  487 U.S. at 887–89.  The Supreme Court determined that plaintiff sought "to enforce the statutory mandate itself, which happens to be one for the payment of money."  *Id.* at 900.  The Court distinguished that from "a suit seeking money in *compensation* for the damage sustained by the failure of the Federal Government to pay as mandated."  *Id.*  Here, the basis for the relief Plaintiffs seek is compensation for allegedly wrongful conduct to Plaintiffs' former property interests, not to compel the United States to enforce a statutory mandate that "happens to be one for the payment of money."  *See id.*  The relief they seek is retrospective in nature. *Bowen* precludes that relief.

Notably, Plaintiffs never explain why "the theoretical relief available to Plaintiffs in the Court of Claims is not an adequate substitute for prospective relief available in the district court."  *See* Pls.' Opp'n at 35.  Nor do Plaintiffs explain what value they would get from the equitable relief they seek here, or how this Court could order prospective relief.  Any breach of trust or fiduciary

17

duty occurred in the past.  Plaintiffs do not assert that they continue to have a trust relationship with the United States; indeed, their entire claim is premised upon the end of that trust relationship.  *See id.* at 19–20 (discussing repudiation of trust).  A declaration, for example, that "the United States failed to provide just compensation to Individual Landowners and their heirs for their taken land and thus breached its common law fiduciary duty," *see id.* at 32; Compl., Prayer for Relief ¶ C, would have no effect or remedy any injury.  The only possible value to Plaintiffs of a judgment in their favor in this suit is to use it as *res judicata* for a takings claim in the Court of Federal Claims.  *See McKeel v. Islamic Rep. of Iran*, 722 F.2d 582, 590–91 (9th Cir. 1983) (holding that court lacked jurisdiction over a taking claim that asked for equitable relief because "[t]he only value to appellants of the declaratory judgment they seek would be to have it serve as res judicata in the Claims Court").  As such, Plaintiffs' Complaint is truly one for money damages and this Court lacks jurisdiction and cannot provide Plaintiffs with meaningful relief.

**F. Plaintiffs' Accounting Claim Is Without Merit.**

Plaintiffs advance a novel and unsupported legal theory that when they received inadequate compensation for their property, a "constructive trust was imposed on the United States Treasury in the amount of the inadequacy of the compensation" and the United States now has trust and fiduciary duties over that constructive trust and must, *inter alia,* provide "a full and complete accounting" of that constructive trust.  Such a claim is completely without legal basis.

"A constructive trust is a legal fiction, an equitable remedy devised to prevent unjust enrichment and compel restitution of property that in equity and good conscience does not belong to the Defendant." *See United States v. Andrews,* 530 F.3d 1232, 1237 (10th Cir. 2008) (quotations omitted). "The recipient of the property, the constructive trustee, is deemed to hold legal title to the property for the benefit of the claimant, and it is the obligation of the constructive trustee to surrender the property to the claimant." *Id.*

Plaintiffs cannot justify use of this "legal fiction" here. First, the doctrine is used to compel the return of specific property or assets, whereas Plaintiffs here seek compensation. The "property" they assert they were deprived of is "adequate compensation for" their land. Plaintiffs' prayer for relief does not assert an interest in recovering any specific assets, and the applicable statutes conclusively extinguished any real property interests Plaintiffs had. *See Great-West Life & Annuity Ins. Co. v. Knudson,* 534 U.S. 204, 213 (2002) (noting that "a constructive trust" could be sought "where money or property identified as belonging in good conscience to the plaintiff could clearly be traced to particular funds or property in the defendant's possession"). Nor is a constructive trust a necessary remedy to prevent Defendant from "unjust enrichment." Defendant paid Plaintiffs for their land. If Plaintiffs had timely brought a claim alleging that such compensation was inadequate, the possibility of a remedy was available — through, for example, a Fifth Amendment takings suit in the Court of Federal Claims — such that the creation of a legal fiction such as a constructive trust is not necessary.

But even if a constructive trust were imposed here, it does not follow that this legal fiction would vest the United States actual trust responsibilities with regard to that money.  This Court cannot force the United States not only to assume trust responsibilities with regard to the "trust fund" in the future, or to make it liable for failure to comply with statutes and regulations regarding trust funds for the past 60 years.  *See Jicarilla*, 131 S. Ct. at 2335 ("And Congress has set forth a nonexhaustive list of the Secretary of the Interior's 'trust responsibilities' with respect to Indian trust funds, which include a series of accounting, auditing, management, and disclosure obligations.").  It cannot be the case that the United States had a duty to provide a "daily and annual balance," for example, for a trust fund that literally did not exist.  *See* 25 U.S.C. § 4011.  Nor does this Court have the authority to impose such a relationship.  *See Jicarilla*, 131 S. Ct. at 2325 n.6 (citing Restatement (Second) of Trusts § 25); *Wolfchild v. United States*, 559 F.3d 1228, 1238 (Fed. Cir. 2009) (stating that an actual trust is created "only if the settlor properly manifests an intention to create a trust relationship." (citing Restatement (Third) of Trusts § 13 (2003))).

While in some cases, courts have held that a plaintiff's claim does not run until it receives an accounting, that reasoning does not apply here.  In those cases, the United States held and managed the plaintiff's funds and the plaintiff could not know whether the handling and management was appropriate until it knew how the funds were handled and managed.  *See, e.g., Cobell v. Norton*, 260 F. Supp. 2d 98, 105 (D.D.C. 2003).  Without an

accounting, a plaintiff could not even know whether a claim existed.  *Id.*  Here, there is no such problem.  Plaintiffs knew how much they received from the United States acquisition of that property at the time that it occurred. Plaintiffs also do not allege that the United States mismanaged their constructive trust funds, nor could they, given that no funds existed. No accounting was or is necessary.

## III.   CONCLUSION

In conclusion, this Court lacks jurisdiction over this case, and cannot grant Plaintiffs relief.  Defendants respectfully request, therefore, that this Court dismiss Plaintiffs' claims with prejudice.  They have no remedy in this Court.

Dated: October 10, 2014.

BRENDAN V. JOHNSON
UNITED STATES ATTORNEY

CAMELA C. THEELER
Assistant United States Attorney
325 S. 1st Avenue, Suite 300
Sioux Falls, SD  57101-2638
(605) 330-4400 (tel.)
(605) 330-4405 (fax)
Camela.Theeler@usdoj.gov

SAM HIRSCH
ACTING ASSISTANT ATTORNEY GENERAL
U.S. Department of Justice
Environment and Natural Resources Division

*/s/ Devon Lehman McCune*
DEVON LEHMAN McCUNE
Senior Attorney

21

Environment and Natural Resources Division
999 18th St., S. Terrace, Suite 370
Denver, CO 80202
(303) 844-1487 (tel.)
(303) 844-1350 (fax)
Devon.McCune@usdoj.gov

OF COUNSEL:
KENNETH DALTON
ERICKA HOWARD
U.S. Department of the Interior
Office of the Solicitor
Washington, DC 20240

**CERTIFICATE OF SERVICE**

The undersigned attorney hereby certifies that she served upon the plaintiffs a true and correct copy of the foregoing Motion to Dismiss by electronic filing and electronic notice on counsel.

*/s/ Devon Lehman McCune*
Devon Lehman McCune
Trial Attorney
Environment & Natural Resources Division