UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| CASIMIR L. LEBEAU, CLARENCE MORETENSON, RAYMOND CHARLES HANDBOY, SR., and FREDDIE LEBEAU, on behalf of themselves and all other persons similarly situated, <br><br> Plaintiffs, <br><br> vs. <br><br> UNITED STATES OF AMERICA, <br><br> Defendant. | CIV. 14-4056 <br><br><br> ORDER GRANTING MOTION TO DISMISS |

Plaintiffs brought suit against the United States alleging claims for breach of trust, breach of fiduciary duty, and accounting. The United States moves to dismiss the complaint for lack of jurisdiction and failure to state a claim upon which relief can be granted. Plaintiffs resist the motion. For the following reasons, the motion is granted.

## BACKGROUND

The facts, according to the complaint (Docket 1), are as follows:

In the 1940s Congress authorized the Pick-Sloan Missouri River Basin Project. Under that program, the Army Corps of Engineers constructed six hydroelectric dams along the Missouri River, including the Oahe Dam. The Oahe Dam impounds Lake Oahe, which stretches from Pierre, South Dakota, to near Bismarck, North Dakota.

Construction of the dam flooded approximately 370,000 acres of land in North Dakota and South Dakota, including 104,420 acres of land within the Cheyenne River Sioux Indian Reservation. Roughly half of that land was owned by the Cheyenne River Sioux Tribe, and the other half was owned by individual members of the Tribe. Over 180 families—30 percent of the tribal population— were forced to leave their homes and sever the cultural and spiritual connection they had to the land.

In 1954, Congress passed an act to provide compensation to both the Tribe and individual landowners for the taking of their lands (the 1954 Act). Pub. L. No. 83-776, 68 Stat. 1191 (1954). In 2000, Congress passed the Cheyenne River Sioux Tribe Equitable Compensation Act (the CRSTECA). Pub. L. No. 106-511, 114 Stat. 2365 (2000). The CRSTECA recognized that the 1954 Act did not provide adequate compensation to the Tribe for the 104,492 acres of land flooded for the Oahe Dam and Reservoir project. Consequently, Congress appropriated money for a trust fund that provided additional compensation to the Tribe.

Plaintiffs are individual members of the Tribe. Casimir LeBeau, Clarence Mortenson, and Freddie LeBeau each owned land that was taken by the United States for the Oahe Dam and Reservoir project. Raymond Handboy, Sr., is the heir of a previous owner. Plaintiffs claim the United States took their land without just compensation in violation of the trust and fiduciary duties the United States owed to them and to all other individual landowners whose land was taken. They also allege that their claims fall under the Indian Trust

- 2 -

Accounting Statute (ITAS) and that a constructive trust exists with respect to the money that would provide just compensation for the taking of their land. Plaintiffs also claim they are entitled to an accounting. Pending is a motion to dismiss the complaint by the United States.[1]

## LEGAL STANDARD

The motion to dismiss is brought under Federal Rule of Civil Procedure 12(b)(1), for lack of subject-matter jurisdiction, and Rule 12(b)(6), for failure to state a claim upon which relief can be granted. A party challenging subject-matter jurisdiction under Rule 12(b)(1) must attack either the facial or factual basis for jurisdiction. *See Osborn v. United States*, 918 F.2d 724, 729 n.6 (8th Cir. 1990). An inquiry into the historical facts underlying a jurisdictional challenge based on a statute of limitations is a factual challenge, so " 'no presumptive truthfulness attaches to the plaintiff's allegations.' " *Spirit Lake Tribe v. North Dakota*, 262 F.3d 732 (8th Cir. 2001) (quoting *Osborn*, 918 F.2d at 730). The court considers matters outside the pleadings without giving the nonmoving party the benefit of the Rule 12(b)(6) safeguards and the party seeking to establish jurisdiction has the burden of proof that jurisdiction exists. *Osborn*, 918 F.2d at 729-30.

When reviewing a motion to dismiss under Rule 12(b)(6), the court accepts as true all factual allegations in the complaint and draws all reasonable inferences in favor of the nonmoving party. *Freitas v. Wells Fargo*

---

[1] Plaintiffs request oral argument on the motion to dismiss. Docket 14 at 35. Because the court can resolve the motion without oral argument, that request is denied.

*Home Mortg., Inc.*, 703 F.3d 436, 438 (8th Cir. 2013) (quoting *Richter v. Advance Auto Parts, Inc.*, 686 F.3d 847, 850 (8th Cir. 2012)). The court may consider the complaint, some materials that are part of the public record, and materials embraced by the complaint. *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

## DISCUSSION

### I.   Statute of Limitations, Sovereign Immunity, and Subject-Matter Jurisdiction

The United States argues that this court does not have subject-matter jurisdiction based on the doctrine of sovereign immunity. Under the doctrine of sovereign immunity, the United States cannot be sued without its consent. *United States v. Mitchell*, 463 U.S. 206, 212 (1983) (*Mitchell II*). "When the United States consents to be sued, the terms of its wavier of sovereign immunity define the extent of the court's jurisdiction." *United States v. Mottaz*, 476 U.S. 834, 841 (1986). The plaintiff has the burden of showing both a waiver of sovereign immunity and a grant of subject-matter jurisdiction. *V S Ltd. P'ship v. Dep't of Hous. & Urban Dev.*, 235 F.3d 1109, 1112 (8th Cir. 2000).

Plaintiffs assert that the United States has waived its sovereign immunity based on the Administrative Procedure Act (APA). Docket 1 at 6 (citing 5 U.S.C. § 702); Docket 14 at 13 n.6 (arguing that the Tucker Act and the Indian Claims Commission Act are inapplicable because plaintiffs brought their complaint under the APA and its waiver of sovereign immunity). The APA is the only basis for the waiver of sovereign immunity identified by plaintiffs.[2] Claims brought under the APA are subject to the six-year statute of limitations found in 28 U.S.C. § 2401(a),[3] which both parties agree applies in this case.

Plaintiffs contend that a statute of limitations issue is an affirmative defense rather than a jurisdictional issue and should not be resolved at this stage of the litigation. *See* Docket 14 at 17-18. Although normally an affirmative defense, in suits against the United States the applicable statute of limitations is a jurisdictional prerequisite. *See Loudner v. United States*, 108 F.3d 896, 900 n.1 (8th Cir. 1997). "District courts lack subject-matter jurisdiction over claims against the Government to which Congress has not consented. Because a statute of limitations is one of the terms of Congress's consent, a time-barred claim against the Government is an unconsented claim,

---

[2] The parties dispute whether the APA applies in this case, or if this case should have been brought as a claim for money damages. *See* Docket 11 at 25-28. To determine the jurisdictional issue of whether plaintiffs' complaint is time barred, the court assumes that the APA would apply.

[3] 28 U.S.C. § 2401(a) provides, in pertinent part, that "every civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues." Section 2401(a) applies to equitable claims as well as claims for money damages. *Sisseton-Wahpeton Sioux Tribe v. United States*, 895 F.2d 588, 592 (9th Cir. 1990).

over which a district court has no jurisdiction." *Miller v. Tony and Susan Alamo Foundation*, 134 F.3d 910, 915-16 (8th Cir. 1998) (internal citation omitted) (citing *Loudner*, 108 F.3d at 900 n.1).  Tribes are not exempt from statutes of limitations in actions against the United States. *See Mottaz*, 476 U.S. at 842-43.

### A.   Plaintiffs' Claims

The complaint states that "[plaintiffs] bring this Complaint against the United States of America, based upon the United States' breach of trust which resulted in an unlawful taking without just compensation . . . ." Docket 1 at 1. Plaintiffs describe their breach of trust allegations:

> The United States . . . breached its trust duties and obligations to Plaintiffs by undertaking transactions adverse to Plaintiffs' interests . . . and by its actions creating conflicts of interest and self-dealing in which the United States subsequently alienated this land for the benefit of others in constructing a dam that flooded the land. The United States further breached its trust obligations when, unbeknown to Plaintiffs, it provided greater compensation to non-Indians whose land was also flooded. The United States has subsequently admitted that the alienation of the Plaintiffs' ancestral homeland was a historical injustice. In so doing, however, the United States continued to breach its trust and fiduciary duties to Plaintiffs in providing compensation to the [Tribe] . . . without providing compensation to Plaintiffs.

Docket 1 at 1-2. Count I alleges a violation of common law and statutory trust obligations for failure to exercise reasonable care in preventing the alienation of land. Count I also alleges a continuing breach because the United States has not paid just compensation for the land in discharge of its trust and fiduciary duties. Count II alleges a breach of fiduciary duties for a failure to deal fairly with plaintiffs in violation of the 1868 Treaty of Fort Laramie, the General

Allotment Act, and/or the Act of March 2, 1889. Count III alleges that the sum which would provide just compensation for the taking of plaintiffs' land qualifies as a constructive trust and requests an accounting of funds so held under the Indian Trust Accounting Statute.

Based on those claims, plaintiffs request a declaration that (1) the United States has breached its trust and fiduciary obligations; (2) the United States' failure to provide just compensation is a breach of common law fiduciary duty; and (3) the United States has not provided plaintiffs with a full and complete accounting of their trust funds. Plaintiffs also request that the court order an accounting and award attorney's fees and costs.

### B.    Accrual of Claims

"A 'claim against [the] United States first accrues on the date when all the events have occurred which fix the liability of the Government and entitle the claimant to institute an action.' " *Izaak Walton League of America, Inc. v. Kimbell*, 558 F.3d 751, 759 (8th Cir. 2009) (quoting *Chandler v. U.S. Air Force*, 255 F.3d 919, 921 (8th Cir. 2001)). "[A] plaintiff's claim 'accrues' for purposes of § 2401(a) when the plaintiff 'either knew, or in the exercise of reasonable diligence should have known, that [he or she] had a claim.' " *Id.* (second alteration in original) (quoting *Loudner*, 108 F.3d at 900).

###### 1.   Alienation of Land

Plaintiffs point to the 1868 Treaty of Fort Laramie,[4] the General Allotment Act,[5] and the Act of March 2, 1889[6] as specific sources of law imposing trust obligations on the United States. Docket 14 at 7. Plaintiffs argue that because these sources of law impose a trust obligation on the United States to prevent the alienation of land, they are sufficient to support plaintiffs' breach of trust and fiduciary duty claims.

Even if the United States had a trust obligation or fiduciary duty to plaintiffs as to their land, any breach of trust or fiduciary duty would have occurred and been known to plaintiffs when their land was flooded. Whether the plaintiffs knew or should have known that the "pertinent events have occurred is determined under an objective standard; a plaintiff does not have to possess actual knowledge of all the relevant facts in order for the cause of action to accrue." *San Carlos Apache Tribe v. United States*, 639 F.3d 1346, 1350 (Fed. Cir. 2011). Plaintiffs do not present any argument or evidence to show that they were unaware of the alienation of their land at the time it occurred or that the flooding of their land was somehow concealed from them. Thus, any claim plaintiffs had relating to a breach of trust or fiduciary duty based on the alienation of their land accrued no later than when the land was flooded because all events fixing liability had occurred and the plaintiffs knew

---

[4] 15 Stat. 635 (1868). Plaintiffs cite Articles 2, 6, and 12. Docket 1 at 6-7.

[5] Act of Feb. 8, 1887, ch.119, 24 Stat. 388.

[6] Act of Mar. 2, 1889, ch. 405, 25 Stat. 888.

of their claim. *See DuMarce v. Scarlett*, 446 F.3d 1294, 1301 (Fed. Cir. 2006) ("DuMarce was notified of the statute and that it took her property interest from her. These two facts, without more, fixed liability.").

### 2.    Compensation for Takings

The 1954 Act provided for compensation to landowners and allowed landowners who were unhappy with the value for their land to bring an action in federal court to secure just compensation. *See* 1954 Act, 68 Stat. at 1194 § XV. According to plaintiffs, tribal landowners did not receive fair value for their land even though similarly situated white landowners did receive fair value. Docket 1 at 1-2. Plaintiffs claim the 1954 Act imposed a trust obligation on the United States to pay just compensation for plaintiffs' land.[7] But any compensation decisions would have been known to plaintiffs at the time the United States made its payments to them. In fact, plaintiffs indicate that they signed statements accepting the values even though they thought at the time the values were too low. *See, e.g.*, Docket 14-2 at 18-19. Thus, plaintiffs' claims

---

[7] The parties disagree on whether the 1954 Act imposed any trust obligations on the United States. The 1954 Act set aside funds in the United States Treasury to pay for the land taken and certain other expenses. *See* 1954 Act, 68 Stat. at 1191-94. The court need not decide whether the 1954 Act created a trust relationship between the individual landowners and the United States for the management and distribution of the funds to compensate the landowners for their land because even if such a trust existed, all events fixing liability for a breach of trust claim would have occurred when, as plaintiffs claim, the United States offered artificially low amounts to plaintiffs in exchange for their land.

based on unfair compensation accrued at that time[8] because all facts fixing the United States' liability had occurred.

In arguing that their claims are not time barred, plaintiffs state that they were unable to bring a claim for adequate compensation due to hostile attitudes at the time. *See* Docket 14 at 16-17. But a reluctance to bring a claim does not toll a statute of limitations. *See Sisseton-Wahpeton Sioux Tribe*, 895 F.3d at 595. Additionally, ignorance of legal rights is insufficient to toll the statute of limitations. *See DuMarce*, 446 F.3d at 1300.

Plaintiffs also contend that they thought the government would eventually compensate them for fair value of their land, and they did not bring suit until it became clear that the government would not pay them in October 2011. But the focus is not on when plaintiffs thought that litigation was the only option to secure compensation for their land, the focus is on when the events fixing the United States' liability occurred and the cause of action accrued. The 1954 Act expressly stated that funds held to compensate individual landowners were only authorized for ten years. *See* 1954 Act, 68 Stat. at 1192. Applying an objective standard, plaintiffs either knew or should have known that they had a claim in or around 1954. Their decision not to

---

[8] Although the law providing for compensation was passed in 1954, the government did not finish appraising the land and making offers for several years. *See, e.g.*, Docket 14-2 at 24 (stating that the government made its offer in September 1956). Section V of the 1954 Act, providing for relocation of tribal members, states that "the authorization contained in section XVI hereof shall remain available for a period not to exceed ten years from the effective date of this Act." 1954 Act, 68 Stat. at 1192. Given the 60-year gap between the 1954 Act and the filing of this suit, the precise date of each offer is immaterial to the statute of limitations question.

pursue litigation for decades based on a hope that Congress would eventually pay them fair value for their land does not toll the statute of limitations.

Plaintiffs' reliance on the CRSTECA and subsequent regulations or interpretations as a justification for their delay is also misplaced. This court has already held that the plain language of the CRSTECA provided compensation only to the Tribe and did not create a trust relationship with the individual landowners. *See LeBeau v. United States*, Civ. No. 12-4178-KES, 2013 WL 4780079, at *4 (D.S.D. Sept. 5, 2013). Even if plaintiffs hoped that the government would eventually pay fair value for the land, it would have been clear no later than 2000—when Congress allocated more money to the Tribe but not the individual landowners—that no additional compensation was forthcoming to the individual landowners.

Even if the United States had a trust obligation or fiduciary duty to provide fair compensation to plaintiffs, and if it breached its duty, that breach would have been clear when the United States took plaintiffs' land and failed to provide adequate compensation. Thus, plaintiffs' claim for additional compensation would have accrued in or around 1954.

## II.  Plaintiffs' Arguments to Extend Statute of Limitations Period

Plaintiffs argue that their claims did not accrue when their land was taken or when they were given inadequate compensation. They contend that their claims have not accrued because the United States has never repudiated its role as trustee, because the refusal to provide compensation to any individual landowners is part of a continuing pattern of conduct running at

least through October 2011, that a constructive trust was established and the
United States must provide an accounting before the statute of limitations
runs, and that they are entitled to equitable tolling of the statute of limitations.

### A.    Repudiation

Plaintiffs argue that a claim for breach of trust does not begin to accrue
until the trustee repudiates its trust obligations to the beneficiary and
repudiation has not occurred. Docket 14 at 19-21. The Eighth Circuit has
stated that "[w]here the trustee repudiates the trust by claiming to hold the
trust corpus as the trustee's own, the cause of action does not accrue until the
beneficiary 'has knowledge of the repudiation.' " *Loudner*, 108 F.3d at 901 n.2
(quoting *Sisseton-Wahpeton Sioux Tribe*, 895 F.2d at 593). Both *Loudner* and
*Sisseton-Wahpeton Sioux Tribe* focus on when the trust beneficiaries would
have known of a claim "by the exercise of reasonable skill and diligence[.]"
*Loudner*, 108 F.3d at 901 n.2 (citation omitted). But this is not a case where
the government held funds in trust for plaintiffs and refused to provide
information on those funds, thereby concealing a claim from plaintiffs. Instead,
the United States did not hold any funds in trust for plaintiffs. So the
repudiation doctrine is not applicable based on the facts of this case.

Even if repudiation were required, plaintiffs' claims would begin to
accrue when they knew, or through the exercise of reasonable skill and
diligence should have known, of a claim. In this case, the alienation of land
and any corresponding breach of trust or fiduciary duty would have been
known to all plaintiffs at the time their land was permanently flooded. *See*

*Spirit Lake Tribe*, 262 F.3d at 738 (finding that a tribe claiming title to land should have known of its claim because the project at issue was a major public works project). Any claim regarding inadequate compensation would have been known at the time plaintiffs received payment from the United States. Thus, even if plaintiffs' claims did not accrue until the United States repudiated its trust obligations, repudiation would have been clear long ago and plaintiffs' claims would be time barred.[9]

## B.   Continuing Violations

Plaintiffs argue that the failure to provide just compensation is a continuing violation that was not cognizable until the Tribe received the letter from the Bureau of Indian Affairs dated October 27, 2011, which informed the Tribe that it could not make direct payment to the individual landowners. *See* Docket 14-5 (BIA letter); Docket 14 at 21-23 (arguing for application of the continuing violations doctrine). " 'Under the so-called continuing-violation theory, each overt act that is part of the violation and that injures the plaintiff starts the statutory period running again, regardless of the plaintiff's knowledge of the alleged illegality at much earlier times.' " *Izaak Walton League*

---

[9] Plaintiffs assert that the United States had a duty to wind up the trust by providing just compensation, which duty was never repudiated. Plaintiffs provide no statutory or regulatory authority indicating that Congress accepted a common-law duty to wind up the trusts. Additionally, plaintiffs provide no authority for using a duty to wind up trust affairs to transform a breach of trust into a separate and indefinitely occurring breach of trust. If plaintiffs' position were accepted it would render the statute of limitations meaningless with respect to breach of trust claims. Finally, even if the United States had an obligation to wind up the trust, plaintiffs do not provide any reason why a claim for that failure would not have accrued when the United States made its final determination regarding the value it would pay for plaintiffs' land.

*of America*, 558 F.3d at 759 (quoting *Midwestern Mach. Co. v. Northwest Airlines*, 392 F.3d 265, 269 (8th Cir. 2004)).

Plaintiffs rely exclusively on *Bodner v. Banque Paribas*, 114 F. Supp. 2d 117 (E.D.N.Y. 2000). In that case, descendants of Jewish customers of French financial institutions claimed that the institutions participated in a scheme to expropriate assets of customers during the Nazi occupation of France and failed to disgorge assets to the descendants as the rightful owners. The descendants sought damages, an accounting, and recovery of the looted assets based in part on alleged violations of international law. *Id.* at 122-23. The defendants argued that the descendants' claims were time barred. The district court held that the descendants had shown facts supporting a continuing violation of international law based on the continued denial of their assets and the fact that the descendants claimed they had been "consistently thwarted in their attempts to recover funds and information" from the defendants. *Id.* at 134-35.

*Bodner* is not binding authority on this court. In *Bodner*, the district court recognized that "[t]he circumstances meriting application of the continuing violation exception must be compelling." *Id.* at 134. The descendants in *Bodner* stated a claim that showed repeated violations of international law. *Id.* at 135. Here, plaintiffs have not shown any violation or overt act in addition to the original alleged breach of trust, nor have plaintiffs shown that the United States had an ongoing trust obligation with respect to their land or their claimed compensation. *See Yankton Sioux Tribe v. U.S. Dep't*

- 14 -

*of Health & Human Servs.*, 533 F.3d 634, 643 (8th Cir. 2008) (discussing the "continuing claims doctrine" and applying it when the government owes a continuing duty such as a recurring or periodic payment).

Moreover, the Eighth Circuit has expressly rejected the application of the continuing violation theory in a similar § 2401(a) case where legislation had fixed liability even though subsequent regulatory actions occurred. *See Izaak Walton League of America*, 558 F.3d at 761 ("[W]e hold that the continuing violation doctrine does not apply."). Plaintiffs attempt to distinguish *Izaak Walton* arguing that the case was brought under the APA based on an agency decision to construct a snowmobile trail rather than a theory of breach of trust obligations. Docket 14 at 23. The fact that the plaintiffs in *Izaak Walton* brought their claims under the APA does not sufficiently distinguish that case from the facts presented here. The Eighth Circuit rejected the continuing violation theory in *Izaak Walton* because specific governmental action created a fixed point in time when the claim accrued, and the plaintiffs were on notice of the regulations and either knew or should have known that they had a claim. *Izaak Walton League of America*, 558 F.3d at 761-62. The same analysis applies here. Plaintiffs either knew or should have known that they had a claim in or around 1954 when the United States tendered the compensation.

Plaintiffs knew the facts necessary to bring a claim against the United States long ago. The fact that the United States could have taken action to make payments to plaintiffs in the following years but did not is not the same as making recurring incorrect payments. The fact that the United States did

not pay and still has not paid the amount plaintiffs believe they were owed does not transform plaintiffs' claim into a continuing violation.

### C.    Indian Trust Accounting Statute

The only funds that plaintiffs claim fall under ITAS are the funds plaintiffs argue are held for them in a constructive trust. Docket 14 at 23-25. Plaintiffs ask the court to impose a constructive trust on the funds they believe should have been paid to them. *Id.* at 14-15. Based on this constructive trust theory, plaintiffs claim there is a continuing breach of trust because the United States refuses to acknowledge or provide an accounting for their claim for compensation. *Id.* at 14-15, 23-25.

The relationship between the United States and Native Americans "is defined and governed by statutes rather than the common law." *United States v. Jicarilla Apache Nation*, 131 S. Ct. 2313, 2323 (2011). Although the Supreme Court has analogized that relationship to a private trust "in limited contexts . . . that does not mean the Government resembles a private trustee in every respect." *Id.* "[T]he organization and management of the trust is a sovereign function subject to the plenary authority of Congress." *Id.* "[T]he analysis must train on specific rights-creating or duty-imposing statutory or regulatory prescriptions." *United States v. Navajo Nation*, 537 U.S. 488, 506 (2003) (*Navajo I*).

In some instances, Congress has "established only a limited trust relationship to serve a narrow purpose." *Jicarilla Apache Nation*, 131 S. Ct. at 2324-25 (citing *United States v. Mitchell*, 445 U.S. 535, 544 (1980) (*Mitchell I*)).

"In other cases, we have found that particular 'statutes and regulations . . . clearly establish fiduciary obligations of the Government' in some areas." *Id.* at 2325 (citing *Mitchell II*, 463 U.S. at 226). Once statutes or regulations impose such a duty, courts can look to common law principles to interpret and define the scope of the duty. *Id.* Nonetheless, "[t]he Government assumes Indian trust responsibilities only to the extent it expressly accepts those responsibilities by statute." *Id.*

Plaintiffs' constructive trust theory is contrary to the Supreme Court's articulation of when the United States assumes trust responsibilities. Additionally, imposition of a constructive trust is inconsistent with Congress's ability to alter or redefine its trust obligations as part of its plenary authority and power to pursue its own policy goals. *See id.* at 2323-25. Plaintiffs cite no authority imposing a constructive trust in similar circumstances.[10] Plaintiffs point to no funds actually held in trust for them by the United States. *See Shoshone Indian Tribe of Wind River Reservation v. United States*, 364 F.3d 1339, 1347-50 (Fed. Cir. 2004) (explaining that claims regarding trust funds apply to a trustee's duty to collect and manage specific funds and payments, but do not apply to assets held in trust). Accordingly, plaintiffs' reliance on the

---

[10] To the extent this constructive trust argument is a separate claim, plaintiffs have failed to state a claim upon which relief can be granted and dismissal of plaintiffs' constructive trust claim is appropriate under Rule 12(b)(6).

tolling language contained in the Indian Trust Accounting Statute is misplaced.[11]

Also, this is not the type of case in which an accounting of trust funds is necessary before a claim accrues. *See Wolfchild v. United States*, 731 F.3d 1280, 1291 (Fed. Cir. 2013) ("[A] final accounting would [not] be necessary to put a plaintiff on notice of a claim, because claimants knew or should have known that the money was publicly distributed in 1981 and 1982."), *cert. denied*, 134 S. Ct. 1516 (2014); *Shoshone Indian Tribe*, 364 F.3d at 1347-48 (discussing cases and concluding that an accounting is appropriate where facts establishing a claim could not otherwise be discovered by a beneficiary). The facts fixing liability were clear at the time and were not hidden from plaintiffs. An accounting of funds held as a legal fiction was not necessary to make plaintiffs aware of their claims.

### D.    Equitable Tolling

Plaintiffs argue that equitable tolling applies. Equitable tolling allows a plaintiff to bring an otherwise time-barred claim if the party diligently pursued its rights and extraordinary circumstances prevented timely filing. *See Menominee Indian Tribe of Wis. v. United States*, 764 F.3d 51, 58 (D.C. Cir.

---

[11] ITAS, which states that the statute of limitations does not run on a claim concerning losses to or mismanagement of trust funds until the beneficiary tribe or individual Indian has been given an accounting of those funds, was first enacted in 1990 and has been subsequently readopted with only minor changes. *See Wolfchild v. United States*, 731 F.3d 1280, 1290-91 (Fed. Cir. 2013). Nonetheless, if plaintiffs here were actually seeking an accounting and return of mismanaged trust *funds*, such claim would have to be brought in the Court of Federal Claims.

2014) (citing *Holland v. Florida*, 560 U.S. 631, 649 (2010)). Extraordinary circumstances sufficient to support equitable tolling must have been beyond the litigant's control, and a misunderstanding of the law or a tactical mistake will not justify equitable tolling. *See id.* (collecting cases). Equitable tolling asserted against the federal government is a narrow doctrine, and for it to apply, the party asserting equitable tolling "must be 'induced or tricked' by government misconduct." *DuMarce*, 446 F.3d at 1305 (citation omitted).

Plaintiffs assert the following facts to justify equitable tolling: they were uneducated, they had difficulties with the English language, they did not understand their legal rights, and the United States actively confused, misled, and coerced them.[12] Docket 14 at 25-26. Plaintiffs claim that the government performed inadequate appraisals, did not notify them of the appraisals, told them to sign the compensation documents immediately, engaged in economic coercion, and promised to eventually provide compensation or other benefits which it never conferred. *See* Docket 14 at 15-17, 26-27; Docket 14-2 at 16 (Mortenson stating that he was told the government would take his leases away if he challenged his appraisal); Docket 14-6 at 11.

The only allegation that could justify equitable tolling is the alleged government deception regarding possible future compensation. Even if plaintiffs initially believed they would get more money than they were

---

[12] At least one plaintiff suggested he was incompetent at some point in time. *See* Docket 14-2 at 4 (statement by Clarence Mortenson claiming to be incapable of handling his affairs). Despite such suggestions, plaintiffs do not argue that they are entitled to have the statute of limitations tolled based on a mental disability.

eventually offered, the ultimate amount of the compensation would have been known to plaintiffs at the time they received their final payment. Furthermore, even if plaintiffs thought that more compensation or other benefits would be forthcoming, plaintiffs have not alleged any facts that would justify waiting roughly 60 years before bringing these claims. Taking plaintiffs' allegations as true, they have not shown that extraordinary circumstances entitle them to equitable tolling.

## CONCLUSION

Plaintiffs' claims accrued decades ago and are therefore barred by the statute of limitations. As this court stated in 2013, it is sympathetic to the claims made by plaintiffs. But even sympathetic claims must comply with jurisdictional requirements. Because there is no valid waiver of sovereign immunity, this court has no jurisdiction to entertain this suit. Plaintiffs may deserve compensation, but that compensation must come from Congress. Accordingly, it is

ORDERED that defendant United States of America's motion to dismiss (Docket 10) is granted.

Dated February 26, 2015.

BY THE COURT:

/s/ *Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE